Cecil W. MAYFIELD, David Hughes, Margaret H. O'Neal and John Robert Trimmier, Appellants,

v.

Dave HICKS and Dave Hicks Company, Inc., Appellees.

No. 19540.

Court of Civil Appeals of Texas, Dallas.

Oct. 24, 1978.

Rehearing Denied Nov. 28, 1978.

Philip C. McGahey, Bagby, McGahey, Ross & DeVore, Arlington, for appellants.

Don R. Hanmer, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellees.

AKIN, Justice.

This is an appeal from an instructed verdict rendered against the guarantors of two equipment leases. Dave Hicks Company sued Four C Corporation, the primary obligor, for amounts due under the first equipment lease agreement and sued Mayfield, Hughes, O'Neal and Trimmier, the guarantors, on a guaranty of Four C Corporation's obligations under this lease. Dave Hicks, individually, also sued Four C Corporation for the amounts due under a second equipment lease and sued the guarantors under the terms of a similar guaranty. Four C Corporation neither filed an answer nor participated at trial. The trial judge, acting on the provisions of an alleged liquidated damage clause in each lease, granted a default judgment in favor of Dave Hicks Company against Four C Corporation for $289,401.08, plus $15,000 in attorneys' fees and also granted a default judgment in favor of Dave Hicks, individually, against Four C Corporation for $20,765.51 and attorneys' fees of $2,500.[1] Both plaintiffs were then granted an instructed verdict against the guarantors.

Only the guarantors appeal from the trial court's judgment asserting, among other grounds, certain defenses to the leases that go to the question of the liability of Four C

---

1. These default judgments have now become final since no appeal was taken from them.

Corporation on the leases. In response, appellees argue that guarantor-appellants are collaterally estopped from asserting any defenses going to questions relating to the liability of the primary obligor, Four C, or to the extent of that liability, since the judgment against Four C is now final. Additionally, guarantor-appellants contend that the guaranties were ambiguous, that consideration for the guaranties had failed, that attorneys' fees were not recoverable under the guaranties, that all offsets and credits had not been allowed them, and that the liquidated damage provision of the lease was a penalty. With respect to the defenses to the leases, we hold that these guarantors are not collaterally estopped and, thus they may assert all defenses available to the primary obligor. We also hold that the "liquidated damage" provision of the lease is a penalty rather than a provision for just compensation. Accordingly, we reverse and remand so that appellees may prove their actual damages.

### Collateral Estoppel

Appellees argue that the trial court properly instructed a verdict for the appellees because the liability of the primary obligor on the leases had been finally determined by the default judgments and that the appellants, as guarantors, are collaterally estopped from asserting any defenses to the liability of the primary obligor, Four C Corporation, under the leases. In this respect, they contend that since the judgment is final as to Four C, the rule applies that a judgment against the principal obligor conclusively establishes the extent of the principal's liability with respect to a guarantor, if that judgment is obtained in a suit of which the guarantor had full knowledge and an opportunity to defend, citing *R. G. McClung Cotton Co. v. Cotton Concentration Co.,* 479 S.W.2d 733, 742 (Tex.Civ.App.–Dallas 1972, writ ref'd n.r. e.); *Empire Steel Corp. v. Omni Steel Corp.,* 378 S.W.2d 905 (Tex.Civ.App.–Fort Worth 1964, writ ref'd n.r.e.); *Latimer v. Texas & N. O. R. Co.,* 56 S.W.2d 933 (Tex.Civ.App.–Beaumont 1933, writ ref'd); *Young v. Bank of Miami,* 175 S.W. 1102 (Tex.Civ.App.–

Amarillo 1915, writ ref'd). Although we agree with the principle asserted by appellees, it is not applicable to the facts in this case because the guarantors have not had an opportunity to defend which is a predicate to the application of collateral estoppel. 1 Freeman on Judgments § 447, at 978 (5th ed. 1925). Indeed, in the cases cited by appellees, those courts applied the rule where the primary obligor's liability had been established in an action where the guarantor had an opportunity to defend but either did not so do or did so unsuccessfully as in *Young v. Bank of Miami, supra,* and subsequently attempted to attack that judgment in a later action by the obligee against the guarantor. It is only in this situation that courts have applied collateral estoppel. Here, the guarantors attempted to assert the defenses available to their principal in the trial court rather than consciously ignore the opportunity to present such defenses. There was no other opportunity to defend because there had been no prior action. Thus, the general rule that guarantors have the right to raise any defenses to the guaranteed obligation that the principal may have applies. Accordingly, we hold that where a guarantor has notice of the action against his principal and he takes part in the suit, he is not bound by the adjudication of the principal's liability by a default judgment against his principal in the same action. This is true because the guarantor may have had no authority to answer in the principal's behalf or to defend in the name of his principal. Indeed, before collateral estoppel applies, the opportunity to defend must be such that the guarantor can actually control the suit with respect to any defenses including those available to the primary obligor. *U. S. Wire & Cable Corp. v. Ascher Corp.,* 34 N.J. 121, 167 A.2d 633, 637 (1961). Thus, where the guarantor is merely given notice that the primary obligor expects the guarantor "to assist" in the conduct of the defense, it is insufficient notice or control so as to preclude the guarantor from asserting the same defenses in a subsequent suit or in the same suit. 1 Freeman on Judgments § 449, at 984–85

(5th ed. 1925). Accordingly, we must now turn to all points of error asserted by appellants.

### Liquidated Damages or Penalty

█ Appellants contend that the clauses in both leases which entitle the lessor to repossess the equipment and sue for unpaid rentals is an unenforceable penalty, and thus no basis for appellees' actual damages. The lessors argue, however, that the provision is a valid stipulation of liquidated damages, for which the lessee became liable upon default. We agree with appellants that the provision is a penalty rather than a liquidated damage provision and that the question of actual damages should be submitted to the jury. The provision in each lease provides:

> Upon the occurrence of an event of Default, and at any time thereafter, Lessor, in addition to any other rights and remedies he may have, shall have the right to . . . take possession of the Equipment, whereupon Lessee's right to use the same under and subject to the terms and provision of this Lease, and any other right or interest of Lessee to or in the Equipment shall absolutely cease, but such taking by Lessor shall not relieve Lessee of its obligations and liabilities hereunder . . . . If Lessor repossesses the Equipment, Lessor shall have the right, at his option, to lease the Equipment to any other party . . . or Lessor may sell the Equipment or salvage the valuable components thereof. In the event of any such leasing or sale, there shall be due from Lessee, and Lessee will immediately pay to Lessor, the difference between the amount of rentals to be received from any third person, or the purchase price at said sale, as the case may be, and the total unpaid rental and other amounts to be paid herein, plus all costs and expenses of Lessor in repossessing, transporting, repairing, releasing, selling or otherwise handling the equipment. [Emphasis added]

The vice in this provision that makes it a penalty rather than a liquidated damage provision is that upon the occurrence of even a minor default by the lessee, the lessor may then declare the lessee in default, take possession of the equipment, and, in addition, demand payment of all lease payments called for in the lease. The coupling of repossession with acceleration of rent, irrespective of the type of breach, is the defect in this provision. It is immaterial that the actual breach was for nonpayment of rentals. A provision is a penalty if it provides for unreasonable payments for a minor breach. For example, the leases here provide that an event of default occurs if the lessee does not punctually perform any of the obligations contained in the leases and the leases obligate the lessee to keep the equipment in good appearance. Conceivably, if the lessee did not punctually keep the equipment in good appearance, then the lessor could declare the lessee to be in default. Such a minor breach could then lead to draconian penalties disproportionate to any actual damage that the lessors may suffer. In *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 487 (1952), the supreme court condemned a similar provision as a penalty because the lease provided the same reparation for breach of each and every covenant in the lease, thus violating the principle of just compensation. Consequently, that court concluded that the provision in that case to be a penalty rather than a provision for liquidated damages. Since the clause in our case subjects the lessee to the same reparation for the breach of any covenant, we likewise hold that the provision is a penalty rather than one for liquidated damages. *United States Leasing Corp. v. Smith*, 555 S.W.2d 766, 770 (Tex. Civ.App.–Tyler 1977, writ ref'd n.r.e.); Annot., 104 A.L.R. 132 (1936); 5 Williston on Contracts § 779 (3rd ed. 1961).

█ Although appellees pleaded that the breach was for unpaid rentals, it does not save the provision from being a penalty because that question turns on whether the provision provides for reasonable compensation. Of course, it would be unreasonable to permit the lessor to repossess and to require the lessee or its guarantors to pay the entire rentals set forth in the lease for

any insignificant, technical breach. Thus, the question of whether the provision is a penalty or a liquidated damage clause is determined by the reasonableness of the provision with respect to just compensation. Since we have held this provision to be a penalty, it will not support the damages in the judgment instructed by the trial court. On remand the question of actual damages is one of proof to be determined by the jury.

Nevertheless, appellees argue that the instructed verdict was proper because appellants failed to request proper special issues inquiring whether the liquidated damage clause was a penalty. We cannot agree because any jury issues pertaining to whether a contractual clause is enforceable as a liquidated damage provision or void as a penalty are immaterial since this determination is a question of law for the trial court, rather than a jury question and must be viewed as of the time the contract was executed. *Schepps v. American District Telegraph Co. of Texas*, 286 S.W.2d 684, 690 (Tex.Civ.App.–Dallas 1955, no writ); *Zucht v. Stewart Title Guaranty Co.*, 207 S.W.2d 414, 418 (Tex.Civ.App.–San Antonio 1947, writ dism'd ); *Muller v. Light*, 538 S.W.2d 487, 488 (Tex.Civ.App.–Austin 1976, writ ref'd n.r.e.). Thus, appellees' contention lacks merit. Since we have held that the trial court erred in instructing a verdict, we turn now to other questions that may arise upon retrial.

### Attorneys' Fees

Appellants contend next that the trial court erred in granting judgment against them for attorneys' fees under the guaranties. They assert that although the lease obligated Four C Corporation to pay attorneys' fees, since the guaranty agreement does not expressly provide for attorneys' fees, the guarantor is not liable for them, citing *Miller v. Bush*, 42 S.W.2d 156, 159 (Tex.Civ.App.–Waco 1931, writ ref'd). *Miller* is not, however, controlling because in that case the attorneys' fees were not allowed because neither the guaranty nor the obligation guaranteed provided for at-torneys' fees. Consequently, that court applied the rule that guarantors are not liable for attorneys' fees, unless they are provided for in the contract guaranteed, or, if that contract is silent with respect to attorneys' fees, unless the guaranty so provides. In this case the contract guaranteed expressly provides for attorneys' fees and the guaranty agreement specifically binds the guarantor to pay all indebtedness incurred by the lessor by reason of the lessor's default. This, of course, includes attorneys' fees incurred in asserting the rights of the obligee. Since the lease agreements provide for attorneys' fees against the principal obligor, and since the guaranties cover any and all indebtedness that the primary obligor may owe, the attorneys' fees are included as a part of the guaranteed debt. *Gubitosi v. Schoellkopf Products, Inc.*, 545 S.W.2d 528, 538 (Tex.Civ.App.–Tyler 1976, no writ); *Young v. J. F. Zimmerman & Son, Inc.*, 434 S.W.2d 926, 927 (Tex.Civ.App.–Waco 1968, writ dism'd); *McGhee v. Wynnewood State Bank*, 297 S.W.2d 876, 884 (Tex.Civ.App.–Dallas 1957, writ ref'd n.r.e.). Accordingly, we hold that trial court properly concluded that attorneys' fees were recoverable from the guarantors.

### Interest

Additionally, appellants complain of the refusal of the trial court to admit evidence showing that certain sums allegedly guaranteed by appellants Wharton and Mayfield were interest, and, therefore, not within the guaranty. In this respect, they contend that, as a matter of law, these guarantors cannot be made liable for interest. We cannot agree. Since the lease provides for interest and since that is the contract guaranteed, the trial court properly permitted recovery of interest on the same rationale as that of attorneys' fees, discussed *supra*.

### Admission of Summaries

Appellants next argue that the trial court erred in admitting into evidence certain appellees' exhibits which were summaries of accounts relating to payment

made to appellees on the leases and pertain to certain payments made and credits due. They assert that these summaries were hearsay since the proper predicate for their admission into evidence under Tex.Rev.Civ. Stat.Ann. art. 3737e (Vernon Supp.1978) was not laid. We agree because it was not shown that the original records were voluminous or that appellants had had access to the original underlying records. *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 93–94 (Tex.1976); *Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712, 723 (Tex.Civ.App.– Dallas 1977, writ ref'd n.r.e.).

### Consideration

■ Appellants also assert that the instructed verdict was improper because there were issues raised by the evidence as to whether the guaranty agreements were supported by consideration. In this respect, they contend that they presented evidence that the guarantors were to receive stock or stock options in Four C Corporation as consideration for acting as guarantors and that since the guarantors failed to receive this stock, there was no consideration for the execution of the guaranties. Whether appellants failed to receive stock from the primary obligor is immaterial. Rather, our question is whether consideration exists between the plaintiffs and the guarantors. In this respect sufficient consideration exists if the primary obligor receives some benefit. *Bonner Oil Co. v. Gaines*, 108 Tex. 232, 191 S.W. 552 (1917); *Hargis v. Radio Corp. of America, Electronic Components*, 539 S.W.2d 230, 232 (Tex.Civ.App.–Austin 1976, no writ); *Estes v. Oilfield Salvage Co.*, 284 S.W.2d 201, 204 (Tex.Civ.App.–Dallas 1955, no writ). Here it is undisputed that the equipment covered by both of these leases was delivered to Four C in reliance on the guaranties and that the primary obligor received the benefit of its bargain. We conclude, therefore, that this contention is without merit.

■ Appellants next contend that since the guaranties were executed after the leases, the consideration for the leases cannot also serve as consideration for the guaranties. We cannot agree. Before addressing the merits of this contention, we first note that all written contracts are presumed to be supported by consideration. Tex.Rev.Civ.Stat.Ann. art. 27 (Vernon 1969); *Unthank v. Rippstein*, 386 S.W.2d 134, 138 (Tex.1964); *Maykus v. Texas Bank & Trust Co. of Dallas*, 550 S.W.2d 396 (Tex. Civ.App.–Dallas 1977, no writ); *Waters v. Waters*, 498 S.W.2d 236, 240–41 (Tex.Civ. App.–Tyler 1973, writ ref'd n.r.e.). Thus the guaranties themselves import consideration and the burden is on appellants to show lack of consideration. *Maykus*, *supra*, at 398. This appellants have failed to do.

■ Finally, appellants urge that since there were questions of fact as to whether the lease agreements and guaranties were executed several months apart, consideration for the leases cannot serve as consideration for the guaranties. One guaranty shows that it was executed six days after the lease; however, the date on the other guaranty was identical to the date of the lease. Some testimony was to the effect that some of the guarantors actually signed the guaranties as long as several months after the lease. The evidence is, however, undisputed that the guarantors would execute the guaranties and that without the guaranties the lessors would not furnish the equipment. We conclude that appellants' contention lacks merit. In *Maykus v. Texas Bank & Trust Co. of Dallas*, 550 S.W.2d 396, 398 (Tex.Civ.App.–Dallas 1977, no writ), the promissory note was dated August 8, 1973, and the guaranty was dated August 15, 1973, and the argument was advanced by appellant that this shifted the burden to appellee to show new consideration. In rejecting this contention, we stated that this apparent discrepancy did not refute the presumption of consideration inherent in the guaranty agreement, and, therefore, held that:

> [M]ere evidence of a time discrepancy in execution between a note and a written guaranty agreement is legally insufficient to rebut the statutory presumption of consideration which supports a separate guaranty accord.

Thus, the mere fact that a guaranty agreement was executed subsequent to the passing of consideration for the principal obligation does not rebut the statutory presumption of consideration nor does it shift the burden of proof to the plaintiffs to show additional consideration.

### Ambiguity

 Finally, appellants argue that the trial court erred in refusing to submit issues to the jury with respect to their allegation that the guaranties are ambiguous and further, that the trial court erred in determining as a matter of law that the guaranties were not ambiguous. Appellants urge that the guaranties are ambiguous because the agreements provide in one part that all guarantors are "jointly and severally" liable and that they bind themselves to pay "any and all indebtedness" which would indicate a general liability of each signer for the total indebtedness as set out in the equipment leases, and then the same instrument later provides that "the undersigned shall not be required to pay the lessor hereunder more than the sum set out adjacent to the undersigned names." Thus, appellants contend that on the face of the instrument it calls for two different liabilities. We cannot agree. First, it was not error for the trial judge to refuse to submit issues on the alleged ambiguity of the guaranties because the question of whether a written agreement is ambiguous is a question of law for the court, rather than for a jury question. *Davis v. Andrews*, 361 S.W.2d 419 (Tex.Civ.App.–Dallas 1962, writ ref'd n.r.e.). Secondly, a reading of the guaranty agreements clearly indicates that the agreements are capable of only one meaning and that is that each guarantor is jointly and severally liable for the indebtedness of Four C Corporation under each lease except that none of the guarantors can be required to pay more than the amount stated by each guarantor's name. Accordingly, the guaranty agreements were not ambiguous.

Reversed and remanded.