AUSTIN HARDWOODS, INC., Appellant,

v.

James M. VANDEN BERGHE, Appellee.

No. 08–94–00086–CV.

Court of Appeals of Texas,
El Paso.

Nov. 16, 1995.

Rehearing Overruled Jan. 24, 1996.

Edward Dunbar, Dunbar & Barill, El Paso, for Appellant.

Charles Scruggs, Scruggs & Peterson, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

### OPINION

CHEW, Justice.

The opinion dated August 24, 1995, is hereby withdrawn and the following is the opinion of this Court.

This is a suit upon an individual guaranty where the principal obligor, a corporation, filed for and received Chapter 11 protection in bankruptcy. Appellant, Austin Hardwoods, Inc. ("Austin") sued Appellee, James M. Vanden Berghe ("Vanden Berghe") as the guarantor of an open account of Frame Industries Suppliers, Inc. ("FISI"). FISI was not a party to the suit. The case was tried to the bench and judgment was rendered against Austin on the guaranty. Austin appeals the findings of fact and conclusions of law of the trial court asserting eight points of error. We reverse and render.

Vanden Berghe was a corporate officer and shareholder of FISI. On January 4, 1989, Vanden Berghe signed a document entitled "Application for Credit" furnished to him by Austin. The application was made on

behalf of FISI and FISI financial references were used in completing the application. Vanden Berghe and George H. Meyers were named as principals in FISI. The credit application was a multi-purpose application that could be used for a corporation, partnership, or an individual.

FISI filed for Chapter 11 bankruptcy on September 3, 1991. Austin was listed as an unsecured creditor and filed a proof of claim for $19,157.19 on the open account it maintained with FISI. Vanden Berghe was not a party to the bankruptcy proceeding and is not mentioned in either the amended plan or the confirmation order. On September 29, 1992, FISI's Second Amended Plan of Reorganization was confirmed by the bankruptcy court. The plan provided that each unsecured creditor whose claim had been allowed was to receive in installments "the equivalent of 50% of its allowed unsecured claim." The bankruptcy plan further provided that all claims asserted or assertable, upon entry of the Order confirming the plan, were satisfied in full.

Michael A. Loewenstein, the El Paso manager of Austin, served on the unsecured creditors committee and attended several of the bankruptcy hearings. On March 4, 1992, Austin made demand upon Vanden Berghe under his FISI guaranty for payment of FISI's indebtedness to Austin. Suit for recovery of said indebtedness was filed on April 24, 1992. Vanden Berghe answered asserting that: (1) he was not a guarantor; (2) the agreement lacked consideration; (3) the agreement was ambiguous; (4) the suit was barred by the statute of frauds; and (5) Austin was estopped from asserting its claim due to its failure to mitigate damages by seeking recovery from FISI. Vanden Berghe later amended his answer to add the defense of payment. The trial court found the guarantee agreement ambiguous and unenforceable, entered judgment in favor of Vanden Berghe discharging him on the debt and ordered that Austin take nothing by its suit. All costs were taxed against Austin.

### Ambiguity of Contract and Vanden Berghe's Liability as Guarantor

■ In Points of Error One, Three, and Four, Austin challenges legal and factual suf-

ficiency of the trial court's findings that Vanden Berghe was not individually liable as a guarantor on the FISI credit agreement, that the credit agreement did not bind Vanden Berghe in his individual capacity, and that the credit agreement was ambiguous and unenforceable. The trial court found the guarantee agreement, upon which Austin premised recovery, ambiguous. A contract is ambiguous only when the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper one; if only one reasonable meaning emerges, it is not ambiguous. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951); *Reyna v. Gonzalez,* 630 S.W.2d 439, 441 (Tex.App.—Corpus Christi 1982, no writ). When a contract is susceptible to a legal meaning, as defined above, the construction of the written instrument is one of law for the court. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962); *O'Grady v. Gerald D. Hines, Inc.,* 683 S.W.2d 763, 765 (Tex.App.—Houston [14th Dist.] 1984, no writ). While the factual findings of the trial court are binding upon this Court, its conclusions of law are not likewise binding, and this Court is free to make its own legal conclusions. *Muller v. Nelson, Sherrod & Carter,* 563 S.W.2d 697, 702 (Tex.Civ.App.—Fort Worth 1978, no writ); *County of El Paso v. Ortega,* 847 S.W.2d 436, 440 (Tex.App.—El Paso 1993, no writ). Moreover, a trial court's conclusions of law are always reviewable de novo, *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The alleged guaranty agreement is a multipurpose form used for credit applications by a corporation, partnership, or individual. The first line of the application requests the name of the firm *or* individual applying for credit. Lower in the application, there is a section inquiring as to ownership where the applicant is to mark either corporation, partnership, *or* individual and then provide the names of the principals in either the corporation or partnership. Lastly, just above the signature line appears the following:

We certify that all the information on this form is correct. We fully understand your credit terms and agree to the proper payment in consideration of extended credit. If a corporation, the undersigned personally guarantees the payment of this account in his individual capacity.

The application then provides a signature line followed by title designation of the signatory. The application was filled out in the name of FISI. All credit references and financial information provided on the application related to FISI. The application was signed by Vanden Berghe in his capacity as Vice President of Operations for FISI. The form did not request any credit information on Vanden Berghe individually.

Upon these facts, we fail to see how the above-cited guaranty clause renders the agreement susceptible to more than one meaning. The language of the agreement is not unclear or indefinite. Rather it clearly evidences application for credit by a corporation guaranteed by the individual signing the application. The fact that the agreement was for extension of credit to FISI does not create a conflict between the guaranty paragraph and the rest of the application. The application is by definition a guarantee agreement whereby a third person undertakes to answer for the debt of another. FISI stood as the primary obligor with Vanden Berghe as guaranty in the event that FISI failed to pay.

■ Likewise, the fact that Vanden Berghe signed the application in his corporate capacity does not create an ambiguity. In order to create a corporate obligation, Vanden Berghe was required to sign in his corporate capacity. However, as the guaranty paragraph stipulates, in addition to the creation of a corporate liability the signing individual further covenants to be individually liable for the debt, again the very essence of a guaranty agreement. Corporate titles after signatures are only "discriptio personae" and do not limit the capacity in which the person can be held liable. *Eubank v. First National Bank of Bellville,* 814 S.W.2d 130, 133 (Tex.App.—Corpus Christi 1991, no writ); *American Petrofina Co. of Texas v. Bryan,* 519 S.W.2d 484, 487 (Tex.Civ.App.—

El Paso 1975, no writ). Upon these facts, we find the agreement susceptible to only one meaning and therefore unambiguous. *See Bryan,* 519 S.W.2d at 487. Accordingly, we are constrained to construe the contract as a matter of law, *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983), without the aid of extrinsic evidence. *Fimberg v. FDIC,* 880 S.W.2d 83, 86 (Tex.App.—Texarkana 1994, writ denied); *Eubank,* 814 S.W.2d at 133.

■ When parties disagree over the meaning of an unambiguous contract, the court must determine the intent of the parties. This determination must be based upon the objective intent of the parties as expressed in the agreement, and not their present interpretation. The construction of an unambiguous contract is a question of law for the court. *Coker,* 650 S.W.2d at 393–94; *First City Nat'l Bank of Midland v. Concord Oil Co.,* 808 S.W.2d 133, 137 (Tex.App.—El Paso 1991, no writ). To determine the objective intent of the parties, a court should examine the entire instrument in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393.

■ The application specifically states that "the undersigned personally guarantees the payment of this account in his individual capacity" and is signed James M. Vanden Berghe. The plain language of the contract clearly evidences an intent of the parties to hold Vanden Berghe personally liable as guarantor. Accordingly, we must find that Vanden Berghe is individually liable as a guarantor for the debt of FISI as a matter of law. Points of Error One, Three, and Four are sustained.

### Satisfaction of Debt Through Bankruptcy

■ Austin next challenges, in Points of Error Two, Five, and Six, the trial court's conclusions of law that Vanden Berghe's liability as guarantor was measured by FISI's liability and that since FISI's debt was fully satisfied by the bankruptcy court's confirmation of FISI's reorganization plan, Vanden Berghe is released from liability on his guaranty. FISI's confirmed bankruptcy plan contained the following clause:

8.01 **SATISFACTION.** All creditors and parties in interest who have or assert Claims in any class shall, upon Confirmation of this Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, is declared and shall be, for all purposes, upon the entry of the Order confirming this Plan, satisfied in full.

Relying upon this paragraph, the trial court specifically found that:

32. The confirmation of the Bankruptcy Plan constituted satisfaction in full of the account made the basis of Plaintiff's suit.

33. The Plaintiff has received payment on the account made the subject of this suit as required by the express terms of the Bankruptcy Plan and the Confirmation Order.

We review these findings de novo as conclusions of law notwithstanding the trial court's classification as findings of fact. *See Mercer*, 715 S.W.2d at 697.

■ At the trial level, Vanden Berghe alternatively plead that even if the credit agreement was interpreted so as to bind him personally as a guarantor of FISI's obligation that he still was not liable on the guaranty as the debt had been fully satisfied through the confirmation of FISI's bankruptcy plan. Satisfaction is an affirmative defense which must be affirmatively plead and upon which the defendant has the burden of proof. Tex.R.Civ.P. 94; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). The dispositive issue at trial and on appeal is whether or not the confirmed bankruptcy plan, through its inclusion of the cited satisfaction paragraph, effected a satisfaction of Vanden Berghe's guaranty.

■ Section 524(e) of the Bankruptcy Code states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." It is settled law, both at the federal and state level, that a discharge in bankruptcy does not affect the

liability of a guarantor. *NCNB Texas Nat'l Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir.1994) (holding that to allow confirmed reorganization plan to effect an accord and satisfaction "would defeat the purpose of loan guaranties; after all, a lender obtains guaranties specifically to provide an alternative source of repayment in the event that the primary obligor's debt is discharged in bankruptcy."); *Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1351 (5th Cir. 1989); *United States v. Stribling Flying Service, Inc.*, 734 F.2d 221, 223 (5th Cir.1984) (holding that the "obligation ... as unconditional guarantors of the corporate obligation to pay its Small Business Administration loan in full, was not affected by confirmation of the reorganization plan by which the corporate debt was restructured and reduced....") [Footnote omitted]; *R.I.D.C. Industrial Development Fund v. Snyder*, 539 F.2d 487, 492 (5th Cir.1976) (holding that "bankruptcy courts may have jurisdiction over secured creditors in Chapter XI proceedings and, if the debt owed the secured creditor is altered by a Chapter XI arrangement, the secured creditor's guarantee is insulated by § 16 of the Bankruptcy Act [now section 524(e) ].").  See also *Swinford v. Allied Finance Co. of Casa View*, 424 S.W.2d 298, 302 (Tex.Civ.App.—Dallas, writ dism'd), *cert. denied*, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 259 (1968) (holding that "[i]t is settled law that a discharge in bankruptcy is personal to the bankrupt and does not have the effect of concealing or releasing the liability of a person jointly liable for a debt."); *Bradley v. Straus–Frank Co.*, 414 S.W.2d 504, 509 (Tex.Civ.App.—Dallas 1967, no writ) (reasoning that Congress' intention in enacting the bankruptcy code was "not to unnecessarily interfere ... with the remedies of the creditor against persons responsible to him other than the bankrupt himself.").

Interpreting FISI's reorganization plan consistent with the relevant bankruptcy statutes and corresponding case law, we find that the above referenced satisfaction paragraph, as a matter of law, effected neither a discharge of Vanden Berghe as guarantor nor a satisfaction of the underlying obligation so as to preclude FISI's recovery against Vanden

Berghe on his guaranty.[1] In this regard, we find *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050–51 (5th Cir.1987) distinguishable. At issue in *Shoaf* was the res judicata effect of a confirmed reorganization plan on a guarantor where the confirmed plan *expressly* provided for the release of the guarantor, who was a party to the bankruptcy proceedings.

The Fifth Circuit, while not deciding the issue of whether or not the bankruptcy court did in fact have subject matter jurisdiction to release the guarantor, reasoned that since the release provision was not objected to and the confirmed plan and order was never directly appealed that the creditor could not now collaterally attack the validity of that order. *Shoaf,* 815 F.2d at 1050. Therefore applying the bankruptcy plan according to its "clear and unambiguous" language so as to accomplish "its intended effect" the court found that the guarantor was released. *Id.* Here there is no such clear and concise language releasing Vanden Berghe (nor releasing the guarantors of FISI generally) nor was Vanden Berghe ever a party to the bankruptcy proceedings. Accordingly, we find *Shoaf* inapplicable. After reconsideration, we conclude that Vanden Berghe is not liable for prejudgment interest, post-judgment interest, attorney's fees, or court costs. Since those sums could not be charged against the principal and they are not expressly provided for in the guaranty agreement, Vanden Berghe does not owe and is not liable for them. See *Western Bank–Downtown v. Carline,* 757 S.W.2d 111, 113 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 793 F.2d 1380, 1381 (5th Cir.1986); 11 U.S.C.A. §§ 362 and 506(b) (West 1993). Points of Error Two, Five, and Six are sustained.

### Material Alteration Resulting in Discharge

■ In its seventh and eighth points of error, Austin contends that the trial court erred in concluding that the original guaranty was altered or renewed thereby discharging the guarantor and that the terms of the debt were materially altered by exceeding the original credit terms. Specifically, Austin attacks the trial court's conclusions of law numbers seven and eight.

7. Renewal or alteration of the terms of the indebtedness, which are not included in or provided for by the terms of the guaranty agreement, should discharge the guarantor from further obligation under the guaranty agreement.

8. The terms of the underlying debt with FISI were materially altered not only by the Plaintiff exceeding the original credit terms but also by the Bankruptcy Plan.

■ Courts strictly construe guaranties, and a guarantor is discharged by the material alteration of the underlying debt between the principal debtor and the creditor. *Old Colony Ins. Co. v. City of Quitman,* 163 Tex. 144, 149, 352 S.W.2d 452, 455–56 (1961); *Straus–Frank Co. v. Hughes,* 138 Tex. 50, 55, 156 S.W.2d 519, 521 (Tex. Comm'n App.1941, opin. adopted); *FDIC v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ). Guarantors are only bound by the terms of the agreement they sign and are not required to watch over the parties to the underlying debt to ensure that their performance conforms to the terms of the contract. *Vastine v. Bank of Dallas,* 808 S.W.2d 463, 464 (Tex.1991); *Old Colony,* 352 S.W.2d at 455. The burden is on the guarantor to plead and prove altera-

---

1. A similar argument was advanced in *Snyder,* 539 F.2d at 490 n. 3 and rejected. "Both the district court and the defendant contend that the choice of language in the arrangement that provides: '[a]ny indebtedness ... remaining unpaid after the last of the distributions provided for herein has been made shall be cancelled, discharged, and extinguished,' is of great import to the case. The district court held that the inclusion of 'cancelled' and 'extinguished' along with 'discharged' expressed an intent to 'absolute[ly] annihilat[e]' the debt. The defendant argues that discharge of the debt instead of the debtor eliminates the underlying debt, thus preventing the creditor from having recourse to the guarantor. We reject both of these readings. The bankruptcy court can affect only the relationships of debtors and creditor. It has no power to affect the obligations of guarantors." Citing *United States v. George A. Fuller Co.,* 250 F.Supp. 649, 656 (D.Mont.1965).

tion without his consent, in order to be entitled to discharge from liability.

A material alteration is an alteration of the underlying debt that either injures or enhances the risk of injury to the guarantor. *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 365 (Tex. 1968). Material alteration is an affirmative defense. *Bullock v. Kehoe*, 678 S.W.2d 558, 559 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *FDIC*, 745 S.W.2d at 944. The elements of the defense are threefold: (1) a material alteration of the underlying contract; (2) made without his consent; (3) which is to his detriment (i.e., is prejudicial to his interest). See *Old Colony*, 352 S.W.2d at 456; *Straus–Frank Co.*, 156 S.W.2d at 521.

The trial court in Finding of Fact nine states that the original credit terms were not to exceed $15,000; however, we find no evidence of such a limitation on the face of the agreement. At most there is a handwritten notation on the agreement that cites to between 12,000 and 15,000. We find no evidence in the record to support the finding that this was a reference to a dollar amount beyond which credit could not be extended. On the contrary, the record reflects that the credit agreement established an "open account" whereby the amount of credit and exact time of payment were to be determined in the future. FISI's purchases were then charged to its account with Austin and FISI would then remit payment by check on a monthly basis. Neither the credit application nor the account maintained by Austin referenced a credit limit on the account. Furthermore, the ledger for the FISI account shows the balances ranging from $69,141.33 on April 12, 1990 to $19,157.19 on June 29, 1991. Vanden Berghe knew of these ever-changing balances as he was directly involved in the payment of these bills and never sought to remove himself as guarantor or contest the outstanding balance on the basis of FISI's credit limit being exceeded. Accordingly, in light of the status of the account as an "open account" and the evidence presented by the accounts receivable ledger, we find that there is legally insufficient evidence to support the trial court's conclusion that the underlying debt was materially altered by Plaintiff's exceeding the original credit terms.

Austin finally contends that the trial court erred in concluding that FISI's bankruptcy plan constituted a material alteration of the terms of the underlying debt between FISI and Austin. This point was previously addressed and it is well-settled law that modification of a corporate debt through a confirmed reorganization in bankruptcy does not constitute a material alteration of the underlying obligation so as to release a guarantor. See *Johnson*, 11 F.3d at 1266; *Stribling Flying Service, Inc.*, 734 F.2d at 223; *Snyder*, 539 F.2d at 492. We sustain Austin's Points of Error Seven and Eight as they challenge the trial court's conclusions of law that the underlying debt upon which Vanden Berghe's guaranty was premised was materially altered either through alteration of the agreement itself or through bankruptcy.

The judgment of the trial court is reversed and judgment is rendered in favor of Austin in the amount of $9,578.60.