**84 LUMBER COMPANY,**
**L.P., Appellant**

v.

**David POWERS, Appellee.**

**No. 01–09–00986–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 26, 2012.

Rehearing Overruled July 2, 0212.

F. Richard Leach, Leach & Minnick, P.C., Houston, TX, for Appellant.

Jeffrey L. Gilman, Gilman & Gilman, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

JIM SHARP, Justice.

This appeal is from the grant and denial of cross-motions for summary judgment in

a contract case. 84 Lumber contends that David Powers is liable as a matter of law in his capacity as personal guarantor for the debt of David Powers Homes, Inc. We reverse and render.

### Background

David Powers Homes, Inc. applied for credit with 84 Lumber by filling out a written credit application form. The copy of the application form in evidence before the trial court was partially cut off and partially illegible. Above the signature line, however, was a paragraph in capital letters that reads as follows:

[ ]GNING BELOW I HEREBY CERTIFY THAT I AM THE OWNER, GENERAL PARTNER OR PRESIDENT OF THE ABOVE [ ]ESS AND I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND [ ]ENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND [ ]TIONS ON THE REVERSE SIDE OF THIS APPLICATION AND UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL INFORMATION CONTAINED IN THIS APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. [ ]ATION MUST BE FULLY AND COMPLETELY SIGNED AND WITNESSED.[1]

_____
Applicant Date

_____
Print Name

(If Applicant is a partnership, then general partner must sign the application. If Applicant is a corporation, then President must sign the application.)

The application was signed "David Powers," with an asterisk by the name and "as officer" hand-written over the date. In the "Print Name" line was handwritten "President David Powers."

The credit line secured by this application became delinquent and 84 Lumber sued David Powers Homes, David Powers and Sherry Jessup, a David Powers Homes employee and signatory to a credit application on behalf of David Powers Homes. 84 Lumber asserted that both David Powers and Sherry Jessup, the individual defendants, were liable as guarantors for the debt of David Powers Homes.

All defendants filed a general denial but David Power Homes further denied the veracity of the sworn account, the amount of the claims, and the crediting of all just offsets. David Powers and Sherry Jessup, the individual defendants, challenged the capacity in which they were sued, plead a failure of consideration, and claimed the guarantees were ambiguous as to whether the individuals were liable in their individual capacity.

84 Lumber moved for summary judgment but the record does not reflect that the motion was granted. Rather, the record indicates that a post-answer default judgment was rendered against all defendants, jointly and severally, in the amount of $150,541.94. The subsequent motion to set aside the default judgment and for a new trial was granted. Thereafter, the defendants filed a supplemental answer asserting the statute of frauds as an affirmative defense and alleging a defect in the parties, i.e., that another David Powers entity had actually submitted the purchase orders in question. 84 Lumber thereafter released Sherry Jessup, leaving only David Powers and David Powers Homes as defendants.

_____
1. [ ] indicates where the left margin was cut off of the copy before the Court.

When 84 Lumber filed a second motion for summary judgment against the two remaining parties, only David Powers responded. He also filed a cross-motion for summary judgment against 84 Lumber based on the statute of frauds. The trial court's final judgment granted 84 Lumber's motion as to David Powers Homes, denied 84 Lumber's motion as to David Powers individually, and granted David Powers's cross-motion for summary judgment against 84 Lumber. The court ordered that 84 Lumber recover $150,541.94 from David Powers Homes, plus pre-and post-judgment interest and attorney's fees. The trial court specifically held that David Powers is not liable to 84 Lumber as a guarantor.

84 Lumber appeals this judgment to the extent that it rendered summary judgment in favor of David Powers against 84 Lumber and denied summary judgment against David Powers.

### David Powers's Liability as Guarantor

In its sole issue, 84 Lumber asks this Court to reverse the denial of summary judgment it sought and the rendition of summary judgment in favor of David Powers on the basis that David Powers is liable as a matter of law in his capacity of personal guarantor of the debt of David Powers Homes.

#### 1. The Parties' Contentions

84 Lumber argues that Powers's signature immediately below the unambiguous recital that he was to "unconditionally and irrevocably personally guarantee the credit account and []ents of any and all amounts due by the above business" binds Powers as a matter of law. It further reasons that, as David Powers Homes did not appeal the judgment against it, David Powers is liable for that amount assessed against David Powers Homes in that now-final judgment.

David Powers counters that the credit application was signed only in a representative capacity and thus does not bind him individually, is ambiguous, is unenforceable pursuant to the statute of frauds, and covers purchases made by entities other than David Powers Homes.

#### 2. Standard of Review

■ We review a trial court's grant of summary judgment de novo. *Mid–Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex.2007). When, as here, both parties moved for summary judgment and the trial court granted one and denied the other, we must determine all questions presented and render the judgment the trial court should have rendered. *Id.; Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002). Summary judgment is appropriate if there is no genuine issue of material fact and the movant establishes that he is entitled to judgment as a matter of law on the issues set out in the motion or response. *See* Tex.R. Civ. P. 166a(c).

#### 3. Unambiguity of the Contract

David Powers argues that the credit application was signed in a dual capacity and is, thus, ambiguous.

##### a. The Law

■ The construction of an unambiguous contract is a question of law for the court. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). If a written instrument is so worded that it can be given "a certain or definite legal meaning or interpretation," it is not ambiguous and the reviewing court will construe it as a matter of law. *Id.* A contract is ambiguous only when its "meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* If a contract is

unambiguous, the courts will give effect to the intention of the parties as expressed or as is apparent from the writing. *Gulf & Basco Co. v. Buchanan,* 707 S.W.2d 655, 658 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). The instrument standing alone will usually be deemed to fully express the intention of the parties, because it is the objective, not subjective, intent that controls. *See City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

The El Paso Court of Appeals was presented similar contract language in the case *of Austin Hardwoods, Inc. v. Vanden Berghe,* 917 S.W.2d 320 (Tex.App.-El Paso 1995, writ denied). There, as here, immediately above the signature line of the credit application was recited: "If a corporation, the undersigned personally guarantees the payment of this account in his individual capacity." *Id.* at 323. The corporate officer signed the application in his capacity as vice-president. *Id.* Thereafter the corporation went into bankruptcy and the creditor company made demand on the officer for payment. *Id.* at 322.

The officer denied being a guarantor; claimed that the agreement lacked consideration and was ambiguous; and claimed that the suit was barred by the statute of frauds. *Id.* at 322. The trial court agreed, found the guaranty agreement ambiguous and unenforceable, and rendered judgment in favor of the corporate officer. *Id.*

In light of the signature under the "personal guaranty" language, the El Paso Court of Appeals "fail[ed] to see how the above-cited guaranty clause render[ed] the agreement susceptible to more than one meaning." *Id.* at 323. The Court noted, "The language of the agreement is not unclear or indefinite. Rather it clearly evidences application for credit by a corpo-

ration guaranteed by the individual signing the application." *Id.*

That the officer signed in his corporate capacity also did not persuade the El Paso Court. To create a corporate obligation, the officer necessarily had to sign in his corporate capacity. *Id.* "However, as the guaranty paragraph stipulates, in addition to the creation of a corporate liability the signing individual further covenants to be individually liable for the debt, again the very essence of a guaranty agreement." *Id.* Having found the agreement unambiguous, the Court construed the contract as a matter of law and found that the corporate officer was individually liable as a guarantor for his corporation's debt. *Id.*

The San Antonio Court of Appeals, too, held that a similar contractual provision created liability in the corporate signatory. *See Taylor-Made Hose, Inc. v. Wilkerson,* 21 S.W.3d 484 (Tex.App.-San Antonio 2000, pet. denied). There, the corporate vice-president signed in her corporate capacity below the following language: "I, personally agree to pay all invoices and cost of collection including, but not limited to collection agency fees, court costs, and reasonable attorney's fees on any amount remaining unpaid after 90 days." *Id.* at 486. In denying her liability, the vice-president claimed that the contract was ambiguous. *Id.* at 487. The creditor, however, claimed that the credit application was unambiguous and established that the corporate officer was a personal guarantor of the debt. *Id.* at 488.

The San Antonio Court agreed with the creditor, holding that "[a] party's signature renders her individually liable for the debt of another as a matter of law if the instrument, on its face, is that of the person who signed it." *Id.* By agreeing to personally pay the corporation's delinquent account, the corporate officer had made herself per-

sonally liable for the corporation's debts. *Id.*

### b. Application of the Law to the Facts

■ In this case, we conclude that David Powers has made himself personally liable for the debt of David Powers Homes. The language of the guaranty herein—notwithstanding the defaced version of the credit application in evidence—is clear and unambiguous. Indeed, it closely mirrors the language in *Austin Hardwoods.*

The application specifically states that, by his execution of the application, Powers certified that he was the owner, general partner, or president of David Powers Homes and that he "unconditionally and irrevocably personally guarantee[d]" the credit account. As in *Austin Hardwoods,* David Powers's signature creates not only a corporate liability, but individual liability for the debt of the corporation. *See* 917 S.W.2d at 323.

This is not a case in which "[h]ard-working and loyal company employees" are easily being "lured into personally guaranteeing the debts of their employer ... despite the fact that they are signing the document solely in their official capacity." *Taylor–Made Hose,* 21 S.W.3d at 495 (Lopez, J., dissenting). Rather, this is the company president securing credit for his own business. We conclude that a president of the corporation is liable for the credit his company received by means of his personal guaranty of his own company's debts.

### 4. Statutes of Frauds

David Powers argues further that the guaranty is deficient because it does not meet all the requirements of the statute of frauds. According to Powers, the lack of a personal signature precludes the guaranty's enforcement.

### a. The Law

■ A guaranty agreement is subject to the statute of frauds, TEX. BUS. & COM.CODE ANN. § 26.01(b)(2) (West 2009) (including "a promise by one person to answer for the debt, default, or miscarriage of another person"), and enforcement thereunder requires that it be in writing and signed by the person to be charged. TEX. BUS. & COM.CODE ANN. § 26.01(a) (West 2009).

■ That a signature is followed by a corporate designation does not necessarily serve to relieve the signatory of individual liability. *See Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252, 259 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Buchanan,* 707 S.W.2d at 657–58. "A signature followed by corporate office will result in personal liability where the individual is clearly designated within the instrument as personal surety for the principal." *Material P'ships,* 102 S.W.3d at 259 (quoting *Buchanan,* 707 S.W.2d at 657); *see also Am. Petrofina Co. of Tex. v. Bryan,* 519 S.W.2d 484, 487 (Tex.Civ.App.-El Paso 1975, no writ) ("The fact that a person is under an agency relation to another which is disclosed does not prevent him from becoming personally liable where the terms of the contract clearly establish the personal obligation."). The addition of the corporate office by the signature may be construed as *descriptio personae* of the signator rather than an indication of the capacity in which he signs. *Material P'ships,* 102 S.W.3d at 259 (quoting *Buchanan,* 707 S.W.2d at 657).

### b. Application of the Law to the Facts

The guaranty language in this case specifically designates David Powers as an individual when it recites: "I am the ... president ... and I do unconditionally and irrevocably personally guarantee this credit account." Under similar facts, the El

Paso Court of Appeals held that a signature of a person in his corporate capacity created liability on behalf of the individual as well as the corporation. *Austin Hardwoods*, 917 S.W.2d at 323. The corporate title after the signature was held to be *descriptio personae*, not a "limit [to] the capacity in which the person can be held liable." *Id.* Accordingly, we conclude that David Powers's signature on the credit application met the requirements of the statute of frauds.

### c. Rebuttal

As his primary support for the proposition that a signature with a corporate designation on a guaranty does not meet the requirements of the statute of frauds to bind the individual, David Powers cites to the 1961 New York case of *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 217 N.Y.S.2d 55, 176 N.E.2d 74, 76 (1961), and an unreported case from the United States District Court for the Northern District of Texas, *Lincoln General Insurance Co. v. U.S. Auto Insurance Services, Inc.*, 2009 WL 1174641, at *9 (N.D.Tex. Apr. 29, 2009). Both are distinguishable.

In *Salzman Sign*, the contract's guaranty language, in an enumerated paragraph within the body of the contract, read: "Where the Purchaser is a corporation, in consideration of extending credit to it, the officer or officers signing on behalf of such corporation, hereby personally guarantee the payments hereinabove provided for." *Salzman*, 217 N.Y.S.2d 55, 176 N.E.2d at 75. There is no indication that the guaranty language was directly above the signature of the corporate officer. *Id.* In fact, the New York Court of Appeals indicated that the language was buried in a long contract. *Id.* at 76, 217 N.Y.S.2d 55, 176 N.E.2d 74 (stating "There is great danger in allowing a single sentence in a long contract to bind individually a person who signs only as a corporate officer.").

Moreover, the language itself is not in the first person and does not personally indicate the intent on the signor's part to bind himself as guarantor.

The Northern District case, too, is distinguishable. In *Lincoln General*, the contract, between U.S. Auto and Lincoln General, signed by Doug Maxwell on behalf of U.S. Auto, recited: "The parties agree that all premium, return commission, profit commission and loss adjustment expense obligations under this Agreement shall be secured by the Agent [US Auto] and its affiliated companies, Gamma Group, Inc., CSI Agency Services, Inc. and Alpha Partners, Ltd." *Lincoln Gen.*, 2009 WL 1174641 at *9. Lincoln General argued that, as Doug Maxwell was allegedly authorized to sign for the three corporate entities, his signature bound all the three. *Id.* The court held, however, that "each party serving as a guarantor must be a signatory on the document." *Id.* Even though Maxwell may have had authority to sign for each company, there was no evidence that he did so, and the federal court was unwilling to hold the other named companies liable as guarantors. *Id.*

We need not, however, look to either foreign jurisdictions or distinguishable federal cases. Rather, we rely upon recent Texas authority on point with this case. *See Taylor–Made Hose*, 21 S.W.3d at 488; *Austin Hardwoods*, 917 S.W.2d at 323.

Our sister court, the Fourteenth Court of Appeals, came to a similar conclusion the issue in *Material Partnerships*, in which Sacos, a bag manufacturing company, was delinquent in paying its invoices to Material Partnerships, Inc. (MPI). *Material P'ships*, 102 S.W.3d at 255. The owner of MPI asked Lopez, the owner and general manager of Sacos, to personally guarantee the company debts. *Id.* Lopez provided MPI a letter reciting: "I . . . want to certify you [sic] that I, personally,

guaranty all outstandings [sic] and liabilities of Sacos Tubulares with Material Partnerships as well as future shipments." *Id.* at 256. Lopez signed the letter over the designation, "JORGE LOPEZ VENTURA, GENERAL MANAGER." *Id.*

When called upon to make good on his guaranty, Lopez claimed that he intended to sign, and did sign, the September 25 letter in his capacity as general manager of Sacos. *Id.* He testified that he gave MPI a corporate guaranty, making the promise on the company's behalf. *Id.* Based on the holding in *Taylor–Made Hose,* however, the trial court found that Lopez's letter unambiguously indicated Lopez's personal guaranty. *Id.* at 260 (citing *Taylor–Made Hose,* 21 S.W.3d at 488).

Justice Frost's concurrence to this case and her reasoning therein are illustrative: "If this court adopted Lopez's construction of the September 25th letter, the agreement would be meaningless. It simply makes no sense for Sacos to be *both* the account debtor *and* the 'corporate guarantor' because a guarantor is one who stands for the debt of *another." Material P'ships,* 102 S.W.3d at 263 (Frost, J., concurring). Holding that Lopez had signed in his individual capacity was the only construction that gave the letter meaning. *Id.* at 263–64.

The same logic pertains here. As in *Material Partnerships,* the language of the guaranty herein states, "I do unconditionally and irrevocably personally guarantee this credit account." The only construction that makes sense is that David Powers personally guaranteed the loan for his company, David Powers Homes.

We conclude that David Powers's signature on the credit application was sufficient to meet the requirements of the statute of frauds.

## 5. The Scope of the Guaranty

Finally, David Powers challenges the applicability of the guaranty to certain purchases which he alleges were not made by David Powers Homes, but were instead made by David Powers Homes S.T., Ltd. or David Powers Homes W.O., Ltd. According to David Powers, the records 84 Lumber offered into evidence, which identify David Powers Homes, Inc. as the customer, are not sufficient to establish purchases by David Powers Homes. 84 Lumber maintains that the liability of David Powers Homes was "quantified when the trial court entered summary judgment against the corporate defendant." Accordingly, "David Powers, individually owes what is owed by David Powers Homes."

### a. The Law

 In construing a guaranty contract, the primary concern of the reviewing court is to ascertain the intent of the parties. *Coker,* 650 S.W.2d at 393. If there is uncertainty about the meaning of a guaranty contract and two reasonable constructions may be made, the reviewing court will apply the construction most favorable to the guarantor. *Clark v. Walker–Kurth Lumber Co.,* 689 S.W.2d 275, 278 (Tex. App.-Houston [1st Dist.] 1985, writ refd n.r.e.). The rule of *strictissimi juris* is applied to prevent the extension of the guarantor's obligation by implication beyond the written terms of the agreement.[2] *Id.*

---

2. "A guarantor is entitled to have his agreement strictly construed so that it is limited to his undertakings, and it will not be extended by construction or implication. Where uncertainty exists as to the meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor." *Coker v. Coker,* 650 S.W.2d 391, 394, n. 1. (Tex.1983) (citations omitted).

Unless the guaranty agreement itself sets forth a more extensive or more limited liability, the guarantor's liability on a debt is measured by the principal's liability. *W. Bank–Downtown v. Carline,* 757 S.W.2d 111, 113 (Tex.App.-Houston [1st Dist.] 1988, writ denied). "[A] judgment against the principal obligor conclusively establishes the extent of the principal's liability with respect to a guarantor, if that judgment is obtained in a suit of which the guarantor had full knowledge and an opportunity to defend...." *Mayfield v. Hicks,* 575 S.W.2d 571, 574 (Tex. Civ.App.-Dallas 1978, writ ref'd n.r.e.).

*Mayfield* makes clear that, unless the guarantor could actually assert the defenses of its principal in the underlying case, this general rule does not apply. *Id.* "This is true because the guarantor may have had no authority to answer in the principal's behalf or to defend in the name of his principal." *Id.* Instead, as also contemplated by *Mayfield,* "the opportunity to defend must be such that the guarantor can actually control the suit with respect to any defenses including those available to the primary obligee." *Id.*

**b. Application of the Law to the Facts**

David Powers, the guarantor, was party to the underlying suit, as was David Powers Homes, the company he serves as president. Both he and his company were fully aware of the suit. Both he and his company had an opportunity to defend against the summary judgment that was rendered against David Powers Homes. Both David Powers and David Powers Homes were represented by the same attorneys in the underlying litigation. Indeed, David Powers Homes could neither have entered into the contract with 84 Lumber nor defended itself in the litigation without the active participation of David Powers, its president. *See In re*

*Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 188 (Tex.2007) (corporations can only act through their human agents).

We hold that the judgment against David Powers Homes conclusively establishes the extent of the liability of David Powers Homes with respect to David Powers, its guarantor.

## Conclusion

We sustain 84 Lumber's sole issue, reverse the portion of the trial court's judgment that denied summary judgment on 84 Lumber's claims against David Powers individually and that granted David Powers's cross-motion for summary judgment against 84 Lumber, and we render judgment that David Powers is liable as guarantor for the full amount of the judgment against David Powers Homes.