DISSENTING OPINION



No. 04-97-01025-CV



TAYLOR-MADE HOSE, INC.,


Appellant



v.



Lynne WILKERSON,


Appellee



 From County Court at Law No. 5, Bexar County, Texas


Trial Court No. 237,546


Honorable Timothy Johnson, Judge Presiding



Opinion by: Sarah B. Duncan, Justice

Dissenting opinion by: Alma L. López, Justice, joined by Phil Hardberger, Chief Justice

Dissenting without opinion by: Catherine Stone, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Alma L. López, Justice

 Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: April 12, 2000


 In a strikingly bold stroke, the majority greatly expands the law of guaranty to favor any
poorly-worded attempt by a business entity to hold the employee or officer of a customer business
personally liable for credit extended to the company. After years of holding to the contrary, the law
in Texas now has suddenly swung from favoring the obligor, to favoring the obligee.

 Taylor-Made Hose appeals a take-nothing judgment based on a no-evidence motion for
summary judgment Wilkerson filed pursuant to Texas Rule of Civil Procedure 166a(i). The majority
opinion of August 31, 1998 affirmed the trial court's judgment. On rehearing en banc, the majority
reverses the no-evidence summary judgment favoring Wilkerson and goes further to find that she
is personally liable for the debt of her former employer. I respectfully dissent.

 Factual and Procedural Background


 Taylor-Made Hose seeks to impose personal liability on Wilkerson for a debt incurred as a
result of an application for credit on behalf of North American Transit, Inc. The credit application
form provided by Taylor-Made Hose required general information on the business and asked for its
bank and other business references. At the bottom of the one-page application, the language which
is at the center of this dispute stated:

 With the signature below I accept the following TERMS AND CONDITIONS of a
Credit Account: ...

 3. I, personally agree to pay all invoices and cost of collection including, but not
limited to collection agency fees, court costs, and reasonable attorney's fees on any
amount remaining unpaid after 90 days.

 OFFICER'S NAME: Lynne Wilkerson TITLE: Vice-President

 SIGNATURE OF OFFICER: /s/ Lynne Wilkerson DATE: 7-21-94


 Taylor-Made Hose alleges that, on the basis of this credit application and "guarantee," it
extended credit to North American Transit, Inc. and, from December 1995 through January 1996,
delivered merchandise totaling $22,790.56. In April 1997, Taylor-Made sued "Lynn [sic] Wilkerson,
as Guarantor for North American Transit, Inc."(1)

 Wilkerson filed a verified denial that (1) she was not liable in the capacity in which she had
been sued, (2) and denied the account because (a) she did not execute any guaranty in her individual
capacity and (b) that all just and lawful offsets, payments and credits had not been allowed. She
further pled that this debt had been discharged in bankruptcy and other defenses not relevant to this
appeal.

 In October 1997, Wilkerson filed a motion for summary judgment under the new no-evidence
summary judgment rule. See Tex. R. Civ. P. 166a(i) (eff. Sept. 1, 1997). In this motion, Wilkerson
asserted that Taylor-Made Hose had no evidence that (1) this agreement was a guaranty, (2) that
Wilkerson signed in her individual capacity, (3) that Wilkerson is liable individually for any of this
debt and, in addition, (4) Taylor Made Hose knew that it was dealing with a corporation, not an
individual.

 Taylor-Made Hose filed a response to the motion for summary judgment to which it attached
the affidavit of its president and CEO, Don Taylor. Mr. Taylor stated:

 My company extended credit to North American Transit, Inc., based upon the
personal guarantee of Lynne Wilkerson. If Ms. Wilkerson had not been willing to
sign the personal guarantee then the company would not have been willing to extend
the credit. ... [W]e anticipated that Lynne Wilkerson would be personally responsible
for these invoices.

Taylor-Made Hose also attached unverified copies of the credit application, its original petition with
invoices, and the remaining pleadings on file at that time.

 Wilkerson's reply to this response and separately-filed evidentiary objections asserted that
Don Taylor's affidavit was not incorporated by reference into the response and, therefore, could not
be considered as proof. Further, the affidavit made no reference to any attached exhibit, nor did the
affidavit state that the credit application was a true and correct copy of that document. Wilkerson
also objected that the Taylor affidavit failed to prove that she had signed any document in her
individual capacity. Lastly, Wilkerson asserted that the invoices attached to the response fail to prove
a debt due and owing for more than 90 days by Wilkerson,(2) or that all conditions precedent to a suit
on a sworn account had been met. None of these attachments were in proper summary judgment
evidence form. She further objected with specificity to all the language in the Taylor affidavit
concerning the intent of the parties as constituting self-serving statements of an interested party that
were not readily controvertible, contained hearsay, and were inadmissable conclusions.

 On October 9, 1997, the trial court granted Taylor-Made Hose a continuance to permit it to
file an amended affidavit by Taylor. Taylor-Made Hose amended and filed the Taylor affidavit with
attached invoices and the credit application on October 10, 1997. Wilkerson filed written objections
to the amended affidavit on October 16. On October 17, 1997 the trial court heard argument and
granted summary judgment in favor of Wilkerson. Taylor-Made timely filed a motion for new trial
and a notice of appeal. The motion for new trial was heard and denied on January 8, 1998.

 The Standard of Review


 As this court stated previously, Moore v. K Mart Corporation, 981 S.W.2d 266, 269 (Tex.
App.--San Antonio 1998, writ denied): "A no-evidence summary judgment is essentially a pretrial
directed verdict," and we apply the same legal sufficiency standard in reviewing a no-evidence
summary judgment as we apply in reviewing a directed verdict. We review the evidence in the light
most favorable to the respondent against whom the no-evidence summary judgment was rendered,
disregarding all contrary evidence and inferences. "A no evidence point will be sustained when (a)
there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively
establishes the opposite of the vital fact." See Merrell Dow Pharmaceuticals, Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997), cert. denied, 118 S. Ct. 1799 (1998).

 Moreover, Rule 166a(i) states "[t]he court must grant the motion [for summary judgment]
unless the respondent produces summary judgment evidence raising a genuine issue of material fact."
Under the federal counterpart to our rule, a fact is "material" only if it affects the outcome of the suit
under the governing law. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). Such a
determination can only be made by reliance on the substantive law, and only those facts identified
by the substantive law can be considered material. Id. A material fact is "genuine" if the evidence
is such that a reasonable jury could find the fact in favor of the nonmoving party. Id. By the same
token, if the evidence is not significantly probative, the fact issue is not genuine. Id.; see also
Lampasas v. Spring Center, Inc., 988 S.W.2d 428, 432 (Tex. App.­Houston [14th Dist.] 1999, no
writ).

Discussion


 Appellant raises a single point of error as to whether, as a matter of law, the signature of a
corporate officer following the language on the corporation's credit application, "I personally agree
to pay all invoices and costs of collection . . . on any amount remaining unpaid after 90 days," is
sufficient to constitute a personal guaranty of the corporation's debts.

 It is well settled that no single provision in an instrument, taken alone, will be given
controlling effect. Rather, all provisions must be considered with reference to the whole instrument.
See Coker v. Coker, 650 S.W.2d 391 (Tex. 1983). In addition, a guarantor occupies a favored
position in the law which requires this court to construe a guaranty strictly in favor of the guarantor.
See McKnight v. Virginia Mirror Co., 463 S.W.2d 428, 430 (Tex. 1971).

 In arguing that the quoted language is sufficient to hold the signer accountable, appellant
relies on a case from the El Paso Court of Appeals bearing remarkably similar facts. See Austin
Hardwoods, Inc. v. Vanden Berghe, 917 S.W.2d 320 (Tex. App.--El Paso 1995, writ denied). In
Austin Hardwoods, the court found that a multi-purpose credit application clearly evidenced a
corporate application personally guaranteed by the individual signing the application. See id. at 323.
The exact language accomplishing this feat appeared immediately above the signature line, and
stated: "If a corporation, the undersigned personally guarantees the payment of this account in his
individual capacity." Id. Key words in the Austin Hardwoods credit application that are missing from
Taylor-Made Hose's credit application are the words "guaranty" and "individual capacity."
Moreover, this sentence unambiguously distinguishes the corporation from the guarantor. See also
Eubank v. First Nat'l Bank of Bellville, 814 S.W.2d 130, 133 (Tex. App.­Corpus Christi 1991, no
writ)(language of guaranty agreement clearly established borrower, creditor, and guarantor, in his
personal capacity). Appellant also seeks support in Gulf & Brasco Co. v. Buchanan, which upheld
a trial court finding that a corporate officer was not liable when he signed his name to a "guaranty
agreement" without indicating his title or corporate capacity. 707 S.W.2d 655 (Tex. App.--Houston
[1st Dist.] 1985, writ ref'd n.r.e.). During a bench trial, the court had declared the document
ambiguous and admitted testimony to explain the ambiguity. The office manager for Gulf & Brasco
testified that he understood Buchanan to have signed in his individual capacity. Id. at 658. He also
stated that it was Gulf & Brasco's policy not to grant credit without a personal guarantee. Id. at 659.
Although Gulf & Brasco requested a personal financial statement, Buchanan did not provide one and
the account was apparently opened solely on the basis of corporate credit and that credit was
extended for six years. Id. Buchanan testified that he signed in his corporate capacity and did not
intend to bind himself personally to pay the corporate account. Id. On the basis of this conflicting
testimony, the trial court found Buchanan had signed only in his corporate capacity and was not
personally liable for the corporate debt. Id. The case does not lend support to appellant's position
here where Wilkerson clearly signed the credit application in her capacity as vice-president. The
application does not even provide a signature blank for one to sign in another capacity. It only
requests and provides for an "officer's" signature.

 What the Gulf & Brasco decision does point out, however, as appellant urges in its motion
for rehearing, is that although both parties have argued that the language at issue is unambiguous,
both sides have presented summary judgment evidence that impliedly raises the issue of ambiguity.
Whether a document is ambiguous is a question of law. See id. at 657; Tuthill v. Southwestern Public
Service Co., 614 S.W.2d 205, 211 (Tex. Civ. App.--Amarillo 1981, writ ref'd n.r.e.). Moreover,
where ambiguity is raised for the first time on appeal, construction of the contract is a question of
law for the court. See Praeger v. Wilson, 721 S.W.2d 597, 600 (Tex. App.­Fort Worth 1986, writ
ref'd n.r.e.); Community Dev. Ser. v. Replacement Parts Mfg., 679 S.W.2d 721, 724 (Tex.
App.­Houston [1st Dist.] 1984, no writ): Sale v. Contran Corp., 486 S.W.2d 161, 165 (Tex. Civ.
App.­Dallas 1972, writ ref'd n.r.e.). An instrument is not ambiguous simply because the parties
disagree over its interpretation. See Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 727 (Tex.
1981). In this case, neither party claimed that the credit application is ambiguous while before the
trial court. Appellant raises ambiguity for the first time in its motion for rehearing. Therefore, the
court may construe the contract as a matter of law. See Praeger, 721 S.W.2d at 600.

 In doing so, however, we are obligated to give effect to the objective intent of the parties as
expressed or apparent in the writing. See Westwind Exploration, Inc. v. Homestate Sav. Ass'n, 696
S.W.2d 378, 382 (Tex. 1985); Praeger, 721 S.W. 2d at 600. To review the credit agreement for the
purpose of giving effect to the true intention of both parties to the agreement, we must look at the
entire agreement. See Gulf & Basco, 707 S.W.2d at 657. The body of the credit agreement in this
case seeks information on the business itself and, in particular, seeks bank references only for the
corporate entity, not for the officer who signs the application. Unlike the guaranty agreement
reviewed in Austin Hardwoods, which was clearly intended as a multi-purpose form that could be
used for corporations, partnerships, or individual applicants, Taylor-Made's form is tailored for
business entities. The applicant can check the type of entity applying, and in this case the blank after
"corporation" is checked. The names of its officers, its bank, and other credit references of the
corporation are provided as required. No credit information is requested on the officer who is to sign
the application. Only her title is requested.

 Looking beyond the document itself to the circumstances surrounding its execution, see
Praeger, 721 S.W.2d at 600-01, we turn to the summary judgment evidence.(3) Appellant's key
evidence concerning the intent of Taylor-Made Hose to bind a corporate officer in her individual
capacity was offered through the amended affidavit of Don Taylor.(4) Wilkerson specifically and
strenuously objected in writing to all statements tending to establish an intent to hold Wilkerson
personally liable as a guarantor. Although the record contains no written order ruling on the
objections to plaintiff's amended affidavit in response to the motion for summary judgment, the
court's granting of a summary judgment creates an inference that the objections were sustained.(5) See
Tex. R. App. P. 33.1(a)(2)(A); Salinas v. Rafati, 948 S.W.2d 286, 288 (Tex. 1997); Frazier v. Yu,
987 S.W.2d 607, 610 (Tex. App.­Fort Worth 1999, writ denied).

 Subsection 2(A) is a substantive revision to Rule 33.1(a)'s predecessor, Rule 52. This
addition relaxes the former requirement of an express ruling, and is consistent with case law holding
that an appellate court can presume the trial court sustained or overruled a motion or an objection
in certain circumstances. See Salinas, 948 S.W.2d at 288 (finding that granting of motion to
disregard "automatically" denied motion for judgment on verdict); Acord v. General Motors Corp.,
669 S.W.2d 111, 114 (Tex.1984) (presuming objection to charge was overruled because trial court
did not alter objection to language); John Hill Cayce, Jr. et al., Civil Appeals in Texas: Practicing
Under the New Rules of Appellate Procedure, 49 Baylor L. Rev. 867, 874 n.10 (1997) (discussing
new Rule 33.1(a)(2)(A)); Significant Features of the New Texas Rules of Appellate Procedure,
Guide to The New Texas Rules of Appellate Procedure 1997 (State Bar of Texas Appellate
Section) at 10 (stating "[a] signed, separate order is not required, as long as the record otherwise
shows that the ruling was made"). Thus, in some instances, a party need no longer get an express
ruling on an objection to preserve error if the ruling is implicit in the court's findings. See, e.g., Blum
v. Julian, 977 S.W.2d 819, 823 (Tex. App.--Fort Worth 1998, no writ) (granting summary judgment
implies overruling of non-movant's objections to affidavit). The effect of the court's implicit ruling
is that Taylor-Made Hose has presented no evidence on the issue of intent to raise a genuine issue
of material fact. Because this is a no-evidence ruling, if the trial "court is barred by rules of law or
evidence from giving weight to the only evidence to prove an essential element, summary judgment
is proper." See Tex. R. App. P. 166a(i) & cmt.; Havner, 953 S.W.2d at 711.

 Furthermore, Taylor-Made Hose has waived the right to complain about the court's ruling
on its summary judgment evidence. "Where evidence has been held to be inadmissible and that
holding has not been challenged on appeal, this court cannot consider the excluded evidence." See
Frazier, 987 S.W.2d at 610; see also Inglish v. Prudential Ins. Co., 928 S.W.2d 702, 706 (Tex.
App.--Houston [1st Dist.] 1996, writ denied); Rhodes v. Interfirst Bank Fort Worth, N.A., 719
S.W.2d 263, 265 (Tex. App.­Fort Worth 1986, no writ); Talbott v. Hogg, 298 S.W.2d 883, 889 (Tex.
Civ. App.­Amarillo 1957, writ dism'd). The only evidence of a party's intent is the unchallenged
affidavit of Wilkerson stating that she did not sign the document in an individual capacity, she did
not guarantee the debt, and did not intend to enter into such a personal agreement when she
completed the application on behalf of the corporation. As an employee and vice-president of the
company, she was authorized to obligate the company on the extension of credit.(6) This evidence
simply does not support a finding by this court that Wilkerson is personally liable for the
corporation's debt on the basis of a corporate credit application.

 Guaranty agreements must be strictly construed and construed against the drafter. Thompson
v. Preston State Bank, 575 S.W.2d 312, 315 (Tex. App.­Dallas 1978, writ ref'd n.r.e.). Under the
circumstances presented here, I would find the language "I, personally, agree to pay. . ." followed
by the signature of a corporate officer, signed only in her official capacity, insufficient to bind
Wilkerson personally for the debt of the corporation. Not only is the document missing clear
indicators such as "guarantee" and a signature line for the surety to sign in her individual capacity,
but there is no competent summary judgment evidence of the alleged intent of Taylor-Made Hose
to extend credit only in the event the debt was guaranteed by someone other than a corporate
representative.

 This case is nowhere close to establishing as a matter of law the type of personal liability
found in Eubank v. First Nat'l Bank of Bellville, where a clearly denominated "Loan Guaranty
Agreement" contained language(7) which "clearly establishe[d] Segundo as the borrower, the Bank
as creditor, and "the undersigned" as guarantor, in his personal capacity and not as a Segundo
representative." Eubank v. First Nat'l Bank of Bellville, 814 S.W.2d 130, 133 (Tex. App.­Corpus
Christi 1991, no writ). Furthermore, the secondary obligor executed the guaranty two days after the
due date of the note for the purpose of obtaining an extension.

 Likewise, the language of guaranty in American Petrofina clearly establishes its intent:

 To induce you to sell gasoline and other petroleum products to McMurry Oil
Company, Inc., of Pecos, Texas, (hereinafter referred to as the Principal), I hereby
guarantee to you the payment of such sum or sums now due and as may at any time,
. . . . I covenant and agree that jointly with the Principal and severally I shall be liable
and responsible for and shall pay to you all sums that may be due or become due by
the Principal.



American Petrofina Co. of Texas v. Bryan, 519 S.W.2d 484, 486 (Tex. Civ. App.­El Paso 1975, no
writ). Adding one's corporate status as president to a signature on such clearly-worded obligations
of "guarantee" to be "jointly . . . and severally liable" added nothing material to this obligation.
Cases where courts have found the corporate designation after a guarantor's signature to be merely
descriptio personae involved strongly-worded guarantee agreements. The language construed by the
majority in the instant case, however, is a far cry from putting a corporate officer on notice that she
is personally guaranteeing a corporate debt.

 Finally, when reviewing a summary judgment granted on general grounds, the appeals court
considers whether any theories set forth in the motion will support the summary judgment. See
Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). When the trial court's
judgment rests upon more than one independent ground or defense, the aggrieved party must assign
error to each ground, or the judgment will be affirmed on the ground to which no complaint

is made. See Bailey v. Rogers, 631 S.W.2d 784, 786 (Tex. App.--Austin 1982, no writ); Hudson
v. Buddie's Super Markets, Inc., 488 S.W.2d 143, 147-48 (Tex. Civ. App.--Fort Worth 1972, no
writ). In addition to the issue concerning the alleged guarantee, Wilkerson also asserted that there
is no evidence that an enforceable contract was formed between Taylor-Made Hose and Wilkerson,
individually. Indeed, there is no evidence of a Wilkerson signature in her individual capacity before
the court. See Tex. Bus. & Com. Code § 3.402(b)(1) (Vernon Supp. 1999) (where signature shows
unambiguously that the signature is made on behalf of represented person, representative not liable).
Taylor-Made did not respond with evidence below or challenge any of these grounds on appeal. In
its reply brief on rehearing, Taylor-Made argues that it had no obligation to respond in order to defeat
a no-evidence motion other than to "raise the fact issue," and rests on Don Taylor's affidavit that
credit was extended and then shifts to the bankruptcy evidence supplied through Wilkerson's motion
for summary judgment, arguing ergo something must still be owed. Again, because the Taylor
affidavit was essentially gutted by Wilkerson's objections, Taylor-Made has not met its obligation
to come forward with sufficient evidence to withstand a directed verdict.

 The majority's opinion puts at risk the personal estates of corporate officers and employees
across the State of Texas. Hard-working and loyal company employees who are routinely authorized
to sign credit applications in the course of business on behalf of the company, can now easily be
lured into personally guaranteeing the debts of their employer no matter how weakly-worded and
despite the fact that they are signing the document solely in their official capacity.


 Alma L. López, Justice

PUBLISH





1. Although Wilkerson is named as a guarantor in the style of plaintiff's original petition, the petition itself does
not contain any allegations that she is a guarantor. The petition merely describes the debt of North American Transit,
Inc.
2. See n.2, supra.
3. As this court has noted in the past, a summary judgment in a contract case where extrinsic evidence has been
admitted is generally improper. However, undisputed extrinsic evidence may resolve the ambiguity as a matter of law.
See Winslow v. Acker, 781 S.W.2d 322, 325 (Tex. App.­San Antonio 1989, writ denied).
4. "The document attached ... is a true and accurate copy of the credit agreement wherein Lynne Wilkerson agrees
to personally pay all invoices from Taylor Made Hose, Inc. to North American Transit, Inc., in addition to any costs of
collection." [objection: hearsay, inadmissible conclusion and legal conclusion, violation of the Best Evidence Rule, and
unsubstantiated opinion].

 "As President and CEO of Taylor Made Hose, Inc., I am aware of the criteria relied upon by this corporation
in extending credit to buyers such as North American Transit, Inc." [objection: not readily controvertible].

 "My company extended credit to North American Transit, Inc., based upon the personal guarantee of Lynne
Wilkerson. . . . If Ms. Wilkerson had not been willing to sign the personal guarantee then the company would not have
been willing to extend the credit." [objection: not readily controvertible, legal conclusion, hearsay, unsubstantiated
opinion].

 "Based upon that personal guarantee, my company provided product in the amounts indicated on the invoices
made the basis of this matter and we anticipated that Lynne Wilkerson would be personally responsible for such
invoices." [objection: not readily controvertible, legal conclusion, hearsay].
5. Appellant would have this rule construed differently, but cites no law supporting its contention.
6. There is no evidence that Wilkerson was a shareholder or owner of the business for whom credit was extended
or would have benefitted in any manner from this transaction.
7. The Loan Guaranty Agreement executed by Lindsey, the secondary obligor, stated, in pertinent part:


 For Value Received and to enable Segundo Corp. Inc. of Sinton, Texas, hereinafter designated as
"Debtor," to obtain credit, from time to time, of First National Bank of Bellville, we hereby request
said Creditor to extend to said Debtor such credit as said Creditor may deem proper, and we hereby
jointly and severally guarantee the full and prompt payment to Creditor at maturity, and at all times
thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities, and
obligations of every nature and kind of said Debtor to said Creditor....


 This guaranty shall be binding upon the undersigned jointly and severally, and upon the heirs, legal
representatives and assigns of the undersigned, and each of them, respectively, and shall inure to the
benefit of said Creditor, its successors, legal representatives and assigns.


 Signed and Sealed by the undersigned, at Bellville, Texas this October 27th day of, 1988.


 Lindsey Eubank [signature]

 Secretary-Treasurer [handwritten]

 Segundo Corp., Individually [handwritten]



There was additional evidence from a bank representative who stated that he personally emphasized to Eubank prior to
the execution of the guaranty that Eubank was signing in his individual capacity, and that he hand-printed the word
"Individually" below the signature line before Eubank signed the document. Eubank disputed this, however, the court
here was dealing with a clearly-worded guaranty agreement that spoke for itself. Under the circumstances, the court found
that the capacities in which Eubank's signature appeared were immaterial. See Eubank, 814 S.W.2d at 132-34.