**Opinion issued December 6, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00782-CV

_____

**PRINCIPAL COMMERCIAL ACCEPTANCE, L.L.C., Appellant**

**V.**

**BUCHANAN FUND V, L.L.C., Appellee**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-59436**

---

## MEMORANDUM OPINION

Principal Commercial Acceptance, L.L.C. ("PCA") appeals a take-nothing judgment rendered in favor of Buchanan Fund V, L.L.C. PCA sued to recover $8,359,245 for Buchanan's alleged breach of a guaranty agreement relating to a real estate development project. After a bench trial, the trial court found the

Guaranty ambiguous, found the evidence supported Buchanan's interpretation of the Guaranty, and determined PCA had not proved that Buchanan breached. On appeal, PCA contends the trial court erred in finding the Guaranty ambiguous and in finding that the Guaranty was not breached. We affirm.

## Background

PCA is a lender specializing in originating and underwriting commercial real estate loans. Buchanan and MAC Cypress Creek GP, LLC ("Macfarlan") formed a partnership, Cypress Creek Centre LP, to purchase and renovate an office complex in northwest Houston. PCA agreed to be the lender for the project.

PCA and Cypress Creek entered into a Loan Agreement for the project. The Loan Agreement provided that the purchase and redevelopment of the property, estimated to cost $100 million, would be funded at a 75% debt-to-25% equity ratio. PCA agreed to finance $75 million over time and Cypress Creek agreed to contribute $25 million in equity for the project. Before closing, Cypress Creek proposed that it contribute about half of the equity, approximately $12.2 million, at closing, and that it contribute the balance of the equity—$12,814,031— in stages throughout the life of the project, as costs were incurred. PCA agreed to this proposal. In the Loan Agreement, the parties defined that portion of the $25 million equity contribution as "Deferred Equity":

> The portion of the Borrower's cash equity investment in the Project to
> be funded by Borrower after Closing as provided in Section 4.7

2

herein, in an aggregate amount of not less than Twelve Million, Eight Hundred Fourteen Thousand, Thirty One and 00/Dollars ($12,814,031.00).

The parties further agreed that Cypress Creek would fund the Deferred Equity as Disbursement Requests were made by PCA, as set forth in Section 4.7 of the Loan Agreement. Section 4.7 provides:

> 4.7 **Deferred Equity.** Notwithstanding any provision of this Agreement or the Loan Documents to the contrary, [PCA] shall have no obligation to disburse [project costs] except in accordance with the Project Budget and not to exceed seventy-five percent (75%) of each Disbursement Request approved by [PCA]. *[Cypress Creek] shall fund twenty-five [percent] (25%) of each such Disbursement Request out of pocket as Deferred Equity when and as such amounts are due* and shall provide [PCA] on a monthly basis with evidence of payment during the preceding month of such Deferred Equity. . . . [Cypress Creek] further acknowledges and agrees that [PCA] has agreed to fund the Loan in reliance upon [Cypress Creek's] agreement to pay and contribute the Deferred Equity when and as due.

(Emphasis added). In other words, PCA would issue Disbursement Requests periodically, and each Disbursement Request would be funded proportionally, with PCA loaning 75% and Cypress Creek contributing equity to fund the remaining 25%.

On the same day the parties entered into the Loan Agreement, Buchanan entered into a "Limited Guaranty of Payment" with PCA. In it, Buchanan guaranteed to PCA:

> (a) If for any reason whatsoever, [Cypress Creek] fails to timely fund the Deferred Equity when and as required pursuant to the Loan Agreement, [Buchanan] shall fund such amounts within ten (10)

3

business days after notice from [PCA] of such failure by [Cypress Creek], provided, however, [Buchanan] will not be obligated to fund Deferred Equity in excess of Twelve Million, Eight Hundred Fourteen Thousand Thirty-One and No/00 Dollars ($12,814,031.00) in the aggregate (the **"Buchanan Funding Obligation"**).

As the project unfolded, Cypress Creek made all periodic Deferred Equity contributions as required by the Loan Agreement, but failed to meet a separate funding obligation under the Loan Agreement, one that required Cypress Creek to fund approximately $2.1 million for net operating expenses through an escrow account. After Cypress Creek failed to fund the escrow, PCA informed Cypress Creek of its default and gave it time to cure. The parties negotiated to try to resolve this issue, but the negotiations ultimately failed, and PCA foreclosed on the property.

PCA then sued Buchanan under the Guaranty to recover Deferred Equity that Cypress Creek did not contribute in the amount of $8,359,245.[1] Buchanan denied liability, responding that the Guaranty did not obligate Buchanan to contribute any remaining unfunded Deferred Equity because Cypress Creek was current on its payments of Deferred Equity "when and as required by [Section 4.7 of] the Loan Agreement" (i.e., in response to Disbursement Requests and in an amount equal to 25% of each Disbursement Request). Buchancan further

---

[1] PCA calculated this number by subtracting the total of various amounts Cypress Creek had contributed as its 25% proportionate share in compliance with earlier Disbursement Requests from $12,814,03, the total Deferred Equity.

4

responded that the Loan Agreement did not accelerate the payment of Deferred Equity upon default, nor did Cypress Creek promise to pay the Deferred Equity except in connection with disbursement requests. In addition, Buchanan asserted the affirmative defense of ambiguity.

After a bench trial, the trial court concluded the Guaranty was ambiguous and imposed no further obligation on Buchanan. Based on these conclusions, the trial court rendered a take-nothing judgment. PCA appeals.

## Discussion

In its first and second issues, PCA contends the Guaranty is unambiguous and requires Buchanan to pay the remaining amount of Deferred Equity that Cypress Creek did not pay. Thus, PCA argues, the trial court erred by failing to enforce the Guaranty. Buchanan responds that the Guaranty imposes no such obligation, and that the trial court correctly concluded the Guaranty is ambiguous.

### A.    Law Pertaining to Construction of Contracts

The interpretation of a guaranty is a question of law that this court reviews de novo. *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 206 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000)). In construing a guaranty, as with other contracts, the primary concern of the reviewing court is to ascertain the intent of the parties. *84 Lumber Co. v. Powers*, No. 01-09-00986-CV, 2012 WL 243524, at

5

*7 (Tex. App.—Houston [1st Dist.] Jan. 26, 2012, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We begin our inquiry into the parties' intent with the contract's express language. *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009). A guarantor's liability is measured by the principal's liability, unless the guaranty expressly provides for greater or lesser liability. *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex. App.—Austin 2001, pet. denied). Any uncertainty in a guaranty must be resolved in favor of the guarantor. *See Coker*, 650 S.W.2d at 394 n.1; *84 Lumber Co.*, 2012 WL 243524, at *7.

If a contract is "so worded that it can be given 'a certain or definite legal meaning or interpretation,' it is not ambiguous and the reviewing court will construe it as a matter of law." *84 Lumber Co.*, 2012 WL 243524, at *2 (quoting *Coker*, 650 S.W.2d at 393). An unambiguous contract will be considered the objective statement of the parties' intent and enforced as written. *Id.* Extrinsic evidence may be admitted to determine the true meaning of the contract only after the contract had been determined to be ambiguous. *Nat'l Union fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

"A contract is ambiguous only when its 'meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning.'" *84 Lumber Co.*, 2012 WL 243524, at *2 (quoting *Coker*, 650 S.W.2d at 393). An ambiguity in a contract may be patent or latent. *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d

6

750, 767 (Tex. App.—Houston [1st Dist.] 2012, pet. filed). A patent ambiguity is "apparent on the face of the contract." *Id.*; *see Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). A latent ambiguity is one that becomes apparent when a contract is applied under particular circumstances. *Tyco Valves & Controls, L.P.*, 365 S.W.3d at 767; *see Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.

Generally, when a contract is ambiguous, interpretation of the agreement becomes a fact issue for the fact-finder to resolve through extrinsic evidence. *Coker*, 650 S.W.2d at 394; *Tyco Valves & Controls, L.P.*, 365 S.W.3d at 766–67; *see Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996)). However, if the meaning of a guaranty is uncertain or it is subject to more than one reasonable interpretation, a reviewing court will apply the construction "most favorable to the guarantor." *Coker*, 650 S.W.2d at 394 n.1, *quoted in 84 Lumber Co., L.P.*, 2012 WL 243524, at *7 & n.2. Where, as here, there are multiple instruments pertaining to the same transaction, they may be read together in construing the parties' agreement. *Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01-07-00370-CV, 2010 WL 2025749, at *16 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.) (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex. 2000)).

## B. Key Provisions of the Guaranty

Section 1 of the Guaranty states Buchanan's obligations. First, section 1(a) requires Buchanan to fund, within ten days after notice, such amounts of Deferred Equity that Cypress Creek failed to timely fund "as required by the Loan Agreement." Section 1(a) of the Guaranty states:

> (a) If for any reason whatsoever, [Cypress Creek] fails to timely fund the Deferred Equity when and as required pursuant to the Loan Agreement, [Buchanan] shall fund such amounts within ten (10) business days after notice from Lender of such failure by [Cypress Creek], provided, however, [Buchanan] will not be obligated to fund Deferred Equity in excess of Twelve Million, Eight Hundred Fourteen Thousand Thirty-One and No/00 Dollars ($12,814,031.00) in the aggregate (the **"Buchanan Funding Obligation"**).

Section 1(b) provides that the Buchanan Funding Obligation will be reduced upon each funding by Cypress Creek of the Deferred Equity equal to 25% of each Disbursement Request.[2] Section 1(c) provides that Buchanan also guarantees "in addition to the maximum Buchanan Funding Obligation, the payment of all Enforcement Costs." Finally, section 1 defines the "Guaranteed Obligations" or "Indebtedness" as the Buchanan Funding Obligation plus Enforcement Costs. Thus, this case turns on the contract's definition of the "Buchanan Funding Obligation."

---

[2] It is undisputed that Cypress Creek made payments of Deferred Equity, but the parties disagree about whether certain payments made by Cypress Creek are properly considered Deferred Equity.

8

Section 2 of the Guaranty defines the remedies available to PCA in the event of Cypress Creek's failure to comply with the Loan Agreement. Section 2(a) sets forth the remedy available for Cypress Creek's *failure to pay Deferred Equity when and as required under the Loan Agreement*, while section 2(c) defines the remedy available *upon the occurrence of any "Event of Default" under the Loan Agreement*. Section 2 states:

(a) In the event of any failure by [Cypress Creek] to pay the Deferred Equity when and as required under the Loan Agreement, [Buchanan] agrees, on demand by [PCA] as aforesaid, to pay the Buchanan Funding Obligation regardless of any defense, right of set-off or claims which [Cypress Creek] or [Buchanan] may have against [Cypress Creek]. This is an absolute, irrevocable, present and continuing guaranty of payment and not of collection.

(b) Notwithstanding anything to the contrary herein contained, in any action to enforce any of the Guaranteed Obligations of [Buchanan] under this Guaranty, [PCA], at its election, may proceed against [Buchanan], with or without: (i) joining [Cypress Creek] in any such action; (ii) commencing any action against or obtaining any judgment against [Cypress Creek]; or (iii) commencing any proceeding to enforce the Loan Agreement, realize upon any Loan Document, foreclose the Mortgage or obtain any judgment, decree or foreclosure sale therein.

(c) Further, upon the occurrence of an Event of Default under the Loan Documents, [PCA] shall have the option, at its sole discretion, to require that [Buchanan] pay the entire remaining Buchanan Funding Obligation to [PCA] to apply toward the Indebtedness in accordance with the Loan Documents. [Buchanan] agrees to pay the Buchanan Funding Obligation no later than ten (10) days after demand from [PCA] after such an Event of Default. [PCA] may apply the funds received as the Buchanan Funding Obligation in any manner permitted under the Loan Documents in Lender's sole discretion. Without limitation, Lender may apply such funds to reduce the

9

principal or other Loan indebtedness, or Lender may use such funds to pay Project Costs.

The Loan Agreement defines "Event of Default" as "[o]ne or more of the events or occurrences referred to in Article 9" of the Loan Agreement.[3] It is undisputed that Cypress Creek's failure to fund the escrow account constituted a failure on the part of Cypress Creek "to comply with any of its other obligations" under the Loan Agreement, and thus, constituted an Event of Default under the Guaranty. It is also undisputed that Cypress Creek timely funded its proportionate 25% share of any Disbursement Request.

## C. Does the Guaranty unambiguously obligate Buchanan to pay unfunded Deferred Equity?

To support its position, PCA points to the following: first, it notes that the Loan Agreement defines "Deferred Equity" as "[t]he portion of [Cypress Creek's] cash equity investment in the Project to be funded by [Cypress Creek] as provided in Section 4.7 herein, in an aggregate amount of *not less than* Twelve Million, Eight Hundred Fourteen Thousand, Thirty-One and 00/Dollars ($12,814,031.00)" (emphasis added). Second, PCA points to the recitals in the Guaranty. It argues that Recital A, which notes that defined terms used in the Loan Agreement have the same meaning as in the Guaranty, incorporates the Loan Agreement's

---

[3]  This reference to Article 9 in the Loan Agreement's definition of Event of Default is a typographical error. Article 9 does not identify events of default but, instead, lists PCA's remedies upon an event of default. It is actually Article *8* of the Loan Agreement that sets forth the events that constitute an Event of Default.

definition of Deferred Equity, and creates an obligation on the part of Buchanan to fund the equity in the project in an amount not less than $12.8 million. PCA then turns to section 2(c) of the Guaranty, which it contends gives PCA "the option, in its sole discretion, to require that [Buchanan] pay the *entire remaining* Buchanan Funding Obligation to apply toward the Indebtedness in accordance with the Loan Documents." In short, PCA argues that the "entire remaining Buchanan Funding Obligation" is all unpaid Deferred Equity, subject to the $12.8 million cap, or approximately $8.4 million. Under its interpretation, Buchanan's obligation under the Guaranty is absolute and required it to pay PCA any part of the $12.8 million of Deferred Equity that Cypress Creek did not previously pay.

Buchanan responds, and the trial court found, that the Guaranty does not require it to guarantee a sum certain, but only those equity contributions due and owing under the Loan Agreement. Thus, Buchanan contends, the Guaranty has a second interpretation and is therefore, at best, ambiguous as to the amount it promised to guarantee. Buchanan points to section 1(a) of the Guaranty and notes that the "Buchanan Funding Obligation" is defined in terms of—and, therefore, is triggered only by—Cypress Creek's failure to timely fund Deferred Equity when and as required pursuant to the Loan Agreement. Section 1(a) provides:

> If . . . [Cypress Creek] fails to timely fund the Deferred Equity when and as required pursuant to the Loan Agreement, [Buchanan] shall fund such amounts within ten (10) business days . . ., provided, however, [Buchanan] will not be obligated to fund Deferred Equity in

11

excess of Twelve Million, Eight Hundred Fourteen Thousand Thirty-One and No/00 Dollars ($12,814,031.00) in the aggregate (the **"Buchanan Funding Obligation"**).

Thus, Buchanan contends that Buchanan's obligation to fund any amount of Deferred Equity (subject to a cap of $12.8 million) is triggered only if Cypress Creek fails to timely fund Deferred Equity when and as required, i.e., after PCA approved and paid its 75% share of a Disbursement Request. Under Buchanan's interpretation, Buchanan's obligation under the Guaranty was never triggered, and, accordingly, never breached, because Cypress Creek never failed to fund its 25% proportionate share of any Disbursement Request, which was the only obligation it had with respect to its contribution of Deferred Equity.

PCA advances two reasons Buchanan's interpretation of the Guaranty is not reasonable: (1) it renders Buchanan's promise illusory and void for lack of consideration and (2) it renders other provisions of the Guaranty meaningless. We address each argument in turn.

"A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam), *quoted in Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 853 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). According to PCA, Buchanan's interpretation gives Buchanan "the power, acting unilaterally, to eliminate its obligation to pay the

12

Deferred Equity" by causing Cypress Creek to default. This argument ignores the separate corporate identities of Buchanan and Cypress Creek: Cypress Creek was the borrower under the Loan Agreement, not Buchanan. While PCA suggests that Buchanan wielded total control over Cypress Creek and could have caused Cypress Creek to default by withholding funds from it, PCA fails to demonstrate that the decision whether Cypress Creek would default under the Loan Agreement was subject to the whim or caprice of Buchanan. PCA did not provide any evidence to support the conclusion that the corporate forms of Buchanan and Cypress Creek should be disregarded. We therefore reject PCA's contention that Buchanan's promise was illusory. *See In re 24R, Inc.*, 324 S.W.3d at 567; *Cleveland Constr., Inc.*, 359 S.W.3d at 853; *see also Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 61 (Tex. App.—Dallas 2006, pet. denied) (promise is illusory when performance of promise "potentially subject to the whim or caprice" of one party to contract). PCA's position also ignores the practical distinction between a loan and equity funding of a project: a loan is a promise to pay a sum of money. A promise to provide deferred equity is in the nature of a promise for future capital contributions, which would not necessarily arise for a project upon default of the loan obligation. In their Loan Agreement, PCA and Cypress agreed to several provisions, including acceleration of sums due under the loan, in the event of a default. But Cypress never promised

to pay PCA unfunded Deferred Equity in that event.  As Cypress Creek's guarantor, Buchanan did not promise to assume a greater obligation than Cypress Creek did.

PCA also argues that Buchanan's interpretation of the Guaranty is unreasonable because it renders other provisions of the Guaranty meaningless. Specifically, PCA contends sections 3, 4, 13, and 18 of the Guaranty are meaningless under Buchanan's interpretation.

We are mindful that a court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).  But none of the provisions PCA cites are rendered meaningless under Buchanan's interpretation of the Guaranty. PCA's argument regarding section 4 of the Guaranty illustrates this point.  Entitled "No Discharge," section 4 provides:

> [Buchanan] agrees that the Guaranteed Obligations, covenants and agreements of [Buchanan] under this Guaranty shall not be affected or impaired by any act of [PCA], or any event or condition except full payment of the Guaranteed Obligations. . . .  [Buchanan] **shall remain liable as a principal until all Guaranteed Obligations shall have been paid in full, notwithstanding any fact, act, event or occurrence which might otherwise operate as a legal or equitable discharge of a surety or guarantor.**

(Emphasis supplied by PCA).  PCA contends section 4 expresses the parties' intent that Buchanan's obligations under the Guarantee remain in existence, even in the

14

face of PCA's foreclosure, until the entire $12.8 million of Deferred Equity is paid in full. The parties may well have intended this. But Buchanan's proposed interpretation, which the trial court adopted, does not suggest that Buchanan's obligations are *discharged* or *terminated*; rather, as applied to these circumstances—where PCA has foreclosed and will make no further Disbursement Requests to Cypress Creek—it means that Cypress Creek will not fail to pay such Requests, and Buchanan's obligation under the Guaranty *will never arise*.[4]

We hold that the Guaranty does not unambiguously obligate Buchanan to pay the unfunded Deferred Equity. The Guaranty defines the Buchanan Funding Obligation in terms of—and presupposes—Cypress Creek's failure to timely fund its 25% share of Deferred Equity after receiving a Disbursement Request for which PCA funded its 75% share. Section 1(a) of the Guaranty, which sets forth Buchanan's obligation as guarantor, is conditional—it arises only "*If* . . . [Cypress Creek] fails to timely fund the Deferred Equity *when and as required pursuant to the Loan Agreement*." The Loan Agreement nowhere requires Cypress Creek to

---

[4] The other provisions PCA contends are rendered meaningless by PCA's interpretation, like section 4, describe ways in which Buchanan could obtain a release or discharge of its obligations under the Guaranty. Section 18, for example, gives Buchanan the *option* to obtain a *release* of the Guaranty by depositing with PCA with then-remaining Buchanan Funding Obligation. Like section 4 and the other provisions PCA points to, section 18 is not rendered meaningless by Buchanan's interpretation. The fact that the Guaranty provides Buchanan a means to obtain an early release in no way suggests that it would obligate Buchanan to pay the Deferred Equity in the absence of Cypress Creek's failure to timely fund Disbursement Requests.

15

pay Deferred Equity without meeting section 4.7's requirements that it present a Disbursement Request to fund project costs. In particular, the Loan Agreement does not obligate Cypress Creek to fund any remaining Deferred Equity upon any defined Event of Default. Thus, the Guaranty reasonably may be interpreted as reflecting the parties' intent that Buchanan's obligation under the Guaranty arise only *if* Cypress Creek failed to timely fund the Deferred Equity in response to a Disbursement Request. And this interpretation does not render meaningless the provisions identified by PCA. Because PCA concedes that Cypress Creek funded its 25% share of any Disbursement Request, Buchanan's obligation under the Guaranty was never triggered and, accordingly, never breached. We hold that the trial court did not err by (1) rejecting PCA's claim that the Guaranty unambiguously required Buchanan to pay the unpaid Deferred Equity or (2) concluding that PCA failed to prove that Buchanan breached the Guaranty.

We overrule PCA's first, second and third issues.

## E. Findings of Fact

In its fourth issue, PCA challenges the trial court's findings of fact as (1) irrelevant in light of the trial court's alleged error in failing to adopt PCA's interpretation of the Guaranty and (2) lacking evidentiary support.

16

PCA's first complaint is premised on our finding error in the trial court's failure to adopt PCA's interpretation of the Guaranty, which we declined to do for the reasons discussed above. Accordingly, we need not address it here.

We likewise conclude that we need not address the sufficiency of the evidence to support the trial court's findings of fact. Ordinarily, if a contract is ambiguous, then the parties' intent is a question for the finder of fact. *Coker*, 650 S.W.2d at 394; *Tyco Valves & Controls, L.P.*, 365 S.W.3d at 766–67; *see Lenape Res. Corp.*, 925 S.W.2d at 574). A guaranty, however, is subject to the rule of construction that, in the event of an ambiguity, the reviewing court will apply the construction "most favorable to the guarantor." *Coker*, 650 S.W.2d at 394 n.1; *84 Lumber Co., L.P.*, 2012 WL 243524, at *7 n.2; *see also JMW Partners, L.P. v. Northstar Bank of Tex.*, No. 2-09-167-CV, 2010 WL 2331399, at *4 (Fort Worth June 10, 2010, no pet.); *Pham*, 58 S.W.3d at 288; *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Clark v. Walker-Kurth Lumber Co.*, 689 S.W.2d 275, 278 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (citing *Coker*, 165 S.W.2d at 394 n.1).

Buchanan does not urge us to construe the Guaranty unambiguously in its favor. Rather, its position is that the meaning of the Guaranty is uncertain and the Guaranty, being susceptible of two reasonable interpretations, is ambiguous. We agree that Buchanan's interpretation of the Guaranty is a reasonable one. But,

because we are construing a guaranty, the proper interpretation is not a question of fact. Rather, we must apply the construction of the Guaranty "most favorable to the guarantor," Buchanan. *See Coker*, 650 S.W.2d at 394 (in construing guaranty, "any uncertainty *must* be resolved in favor of [the] guarantor" (emphasis added)). Accordingly, we need not address the sufficiency of the evidence supporting the trial court's findings of fact. *See* TEX. R. APP. 47.1; *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 315–16 (Tex. App.—Dallas 2004, no pet.) (citing Rule 47.1 and declining to address sufficiency of evidence supporting findings of fact because findings rendered immaterial once conclusions of law determined to be correct on alternate basis).

We overrule PCA's fourth issue.

## Conclusion

We affirm the trial court's take-nothing judgment in favor of Buchanan.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.